Your Honors, and by way of introduction, I brought with me this morning the appellant, Mr. Larry James, who is seated at that council table, and opposing counsel is Mr. Davis and Mr. Chow. And may it please the court, this case has brought forth for review an issue that involves a statute, a statute that violates the protection order, what we expect of a law enforcement official with respect to the enforcement of that protection order, what function, if any, does the magistrate judge have giving advice or interpretation to a law enforcement official inquiring, and what role or limitations does the prosecuting attorney have, who represents one of the parties in the dispute. Now, we filed the action, and the district court found in a motion to dismiss and motion for summary judgment, that there in fact was sufficient probable cause to arrest Mr. James, furthermore found that there was in fact judicial capacity and therefore judicial immunity of the magistrate, and furthermore found that there was in his role and involvement in this event. The only thing the record shows as part of his involvement was that he appointed a special prosecutor. I see nothing in the evidence that he participated in the arrests or caused the arrests. And there lays one of the arguments Mr. James brought forth in his affidavit. There were at least four events to his personal knowledge. Well, it has to be admissible evidence to survive a summary judgment. And I didn't see any evidence that the prosecutor had anything to do with the arrest. He would highly suggest, Your Honor, as Mr. James so described in his affidavit, that Mr. Gabbard at 8 o'clock in the morning on Monday had made it quite clear he was fully aware of the events. And it's quite important and significant to know that. Well, being aware even wouldn't do it. But I don't know that there's any evidence that he was aware at the time the arrests were being made. Well, then there's the second part of that argument. And that is that Mr. James, when charged, citation issued wasn't for a violation of a protection order. It was for a violation of a no-contact order. And the significance of that, as this Court well appreciates under statute, that is not a bondable offense. As such, you stay in jail until you're arraigned. And of the major concern in this case is then while Mr. James was in jail, three things began to disappear, his equipment, his materials, and his livestock, none of which would Dale James have taken but for a belief from her attorney that he was, in fact, in jail and would not be able to be bonded out, all of which tends to support and justify the clear perception Mr. James got from Mr. Gabbert when he said, I will have your ass in jail for good. It was an intended statement based upon some significant conversation. But I understand what this Court says. It wants to have that which fully supports that basis. And getting to that point on what fully supports that basis, we begin first with this huge, huge issue. Was there probable cause in this case to arrest Mr. James? Now, the district court chose to look at affidavits of both Judge Pert and the affidavit of Officer Brown and chose to conclude there was probable cause. And with all due respect, Your Honor, we significantly differ with that perception. Well, the specific question that it seems to come down to is what did the protective order mean when it referred to the driveway in the property in question? And the officers made an attempt to understand what that meant by finding out exactly what the protective order said and then asking the magistrate whether it covered the area where your client was or not. Why isn't that sufficient to support probable cause, an ambiguous order that has been explained by the person who issued it as being arguably covered or probably covered? An excellent question, and that goes to the issue, did any of that take place? Let's look at your question. Was there truly ever a concern by Officer Brown about the definition of driveway? And I'm going to tell you no. Now, why was there no question about driveway is because Dale James was represented by Myron Gabbard at the hearing on August 2 that gave rise to this protective order. Mr. James was there and I was there, and we had our in-depth discussion on what are we talking about. And she drew, Mr. Gabbard drew a diagram. That diagram clearly indicated what driveway meant. Driveway was to the house, the residence. So, no. Dale James, while down in the hay barn with Mr. James and Officer Brown and Officer Wolf, never had a conversation to suggest let's confuse driveway. Never happened because Dale James wasn't thinking in those terms, Larry James wasn't thinking in those terms, and Officer Brown wasn't inquiring of those terms. Now, I understand this court's read a beautiful affidavit of Officer Brown prepared three years later, and that affidavit does attempt to create an interesting argument about driveway. What was the discussion in truth at 1034 in the evening on August 24 with Officer Brown and Dispatch Visser and then Judge Pert? You've got a copy of it, a little 30-second transcription of the entire dialogue of that conversation. At no time did Dispatcher Visser ever understand from Officer Brown, I need an interpretation of driveway. Never happened. We listen to what Visser says to Judge Pert. Judge Pert, we have Mr. James out at the Price Valley Ranch, down at the hay barn, getting his backhoe, he's got a ruptured dam pipeline, and he wants to go fix it and needs it. Now, that's what the judge was told. And the judge then says, what does the order say? And it says, Larry James can't be at the residence, can't be on the driveway. 30 minutes after sunset until 30 minutes before sunrise. And the judge, and then they're interrupted by another call. And then Ms. Visser comes back on the line and the judge says, sounds like a violation to me. In response to the question, the officer is wondering, is there a violation? No interpretation, no solicitation about driveway, no question like, Your Honor, do you think, we need to look at the issue of the definition of driveway. Doesn't happen. And, in fact, what does Dispatch Visser say in her comment back to Officer Brown? She says, the judge is advising it looks like a violation to him. Consequently, with all due respect. Let me ask you a question. Let's assume that the Officer Brown didn't ask the right question to Dispatch and then Dispatch didn't ask the right question to Judge Paird. No one asked the question, is he on the driveway within the meaning of the protective order. But still, from the officer's point of view, they've got a restraint order of some sort, a protective order, and they hear that the judge says it's probably a violation. So if that's the case, then don't the officers have, putting aside whether the judge has been negligent, don't the officers have probable cause? No. I say no, and I'll say no every time, because the officer needs to have in his official capacity facts and evidence that to him justify the enforcement of the statute of probable cause. Can he go call a judge and ask for advice for enforcement? I say no. And I say a judge cannot give advice to a law enforcement official out in the field seeking to enforce his duty. The judge can't do that. And why do I say that? I think it's a violation of his canon of ethics to try to get engaged in the issue of enforcement where the individual, the next day if arrested, is right back before him. So I'm going to say, number one, no, he can't give advice. Number two, I'm going to say that the advice he gave was without a factual basis on the order. Counsel, you have exceeded your time, so if you would wrap up very quickly, we'll give you time to do that. I appreciate that. It would be our position that the district court, in fact, is in error when it concluded there was probable cause for the arrest of Mr. James, and the district court was in error when it concluded the idea of judicial immunity applies. It does not apply. What Judge Peart did was not a judicial function, a normal function. One that the parties ever had an expectation would occur by phone, at night, at his home, without a file, having never read the order at all. Was it even read to him? Maybe an excerpt. Counsel, that's a long summation. We appreciate your argument. I think we understand your argument, and we'll hear now from Adams County. Thank you. Good morning, Your Honors. My name is Jeremy Chu, Deputy Attorney General for the State of Idaho. Could you speak a little more loudly, please? Yes, ma'am. I'm sorry. Jeremy Chu, Deputy Attorney General for the State of Idaho. I represent Judge James Peart in this matter. The co-appellee and I have decided to split the time evenly, so I'll limit myself to five minutes if I can. Just what kind of a function is the judge exercising when he answers the dispatcher's question? I think the function that the judge is performing is a function that judges perform every day. It's a function that the question that was asked of him was, how do you interpret your own order, questions with respect to your own order? And judges do that all the time. A very good example of that, Your Honor, is actually in the record. If you take a look at record, page 171 through, I believe 172, there's actually a portion after the arrest was made in the arraignment, Mr. James asked the question to Judge Peart, okay, I may have a question or two about the order. Yes, Defendant James, as I recall, it was stated it wouldn't be on the driveway past the house after shooting hours, which is one half hour after the sunset, or one half hour, or until, you know, half hour before sunrise. It says from 30 minutes after sunset until sunrise. And it goes on, Your Honor. It goes on to explain the interpretation of his order. And that's what judges do. That's part of it. How does a judge do that in the middle of the night or in the evening, ex parte? In other words, you know, the judge could interpret his order if Mr. James was hauled before him on a contempt chart. But in terms of whether the police should arrest for him being out at the property, you know, normally in the cases I've seen, police are advised by a prosecutor or by a city council. You know, they don't call up the judge and say, is your order being violated? Yes, Your Honor. Something's different in rural Idaho, but normally this would not be a judicial function. Well, Your Honor, I beg to disagree. I mean, when we talk about ex parte communications, I don't know if we're supposed to actually get there. I think the nature, the case law says you really have to focus on the nature of the act, which is what the judge is doing. If it's an ex parte communications order. Okay, what is the judge doing, though? The judge is interpreting his own protective order. So it sounds like your position is if there's a violation of ethical rules, then that's supposed to be taken care of through a disciplinary process against judges and not through civil liability if the act involved is a judicial act, like an intemperate screaming at a litigant in court is in court, or so is that the distinction you're trying to draw? Yes, ma'am. If you take a look at some of these cases, with respect to Stomp, for instance, we're dealing with tubal ligation, an order, an ex parte order with respect to tubal ligation. There certainly are cases that say if the judge in performing a judicial function is violating judicial ethics, that that's not going to offend, that's not going to avoid judicial immunity. But still there's the question whether this judge has judicial, absolute judicial immunity for giving this interpretation in this way. And I believe, Your Honor, when we're talking about – I mean, if we take a look at the standard, we're talking about subject matter jurisdiction and we're talking about the nature of the act. The subject matter jurisdiction, there really isn't an argument here with respect to that. He's presiding over a divorce proceeding in his own case, in his own court. The second issue really has to do with if you want to focus on the arrest and the focus, the focus should be on what act, why was the call made to the judge. The call was made to the judge because he's a presiding judge in his official capacity. And in his official capacity, he said, it sounded like, it sounds like a violation to me. Now, whether or not that's right or wrong, I don't think that's really the focus with respect to judicial immunity. In your own – and, Your Honor, the State did not cite to this case. But in Sadowski, for instance, it's a 2006 case that was actually opined by Judge Gould. In that case, you had a situation where you – Is this a citation not in any of the briefs? It's not. And I will be happy to supply it. Would you leave a – the deputy clerk, Ms. Brebner, will I think have some slips of paper for you to put that citation down for the benefit of the panel and also for opposing counsel. Certainly, Your Honor. It's one of my opinions. Unfortunately, there's so many we can't remember. But I do remember the name, the Sadowski name. And that's probably one touching on judicial immunity. Yes, sir. Yeah. And I will provide that to you. And I see – I don't want to take the – Okay. We'll hear from Mr. Davis then. Thank you. Court, counsel. My name is Jim Davis. I am representing the Adams County appellees in this case. I just have three points. I want to make two of them very quickly. The first is there is no factual support for the allegations against Mr. Gabbard, the prosecuting attorney. And in that regard, I wanted to make note of something in the excerpt of records  These events involving Mr. James' arrest occurred on a Saturday. On the following Monday, there was an arraignment. Mr. Gabbard showed up at the arraignment a little bit late, but he immediately says to the court, Your Honor, again, I would ask Mr. James to have his lawyer or him advise the court or the prosecuting attorney's office whether they prefer to have Mr. Parkinson handle this matter or perhaps Mr. Kroll as a special deputy. He knew he couldn't be involved. So there's no factual support that he was involved in any way in the arrest or incarceration. Meanwhile, was Mr. James sitting in jail all weekend? No, he got out at noon the next day. He was in jail for 12 hours, Your Honor. But he chose to have an early arraignment. What kind of procedure is this where the police call up a magistrate judge to interpret the arraignment? I realize this morning, Your Honor, I will have been practicing for 30 years come March, and I principally have done this kind of work. It's the only case I've ever seen where the law enforcement officer got a hold of dispatch, asked for the terms of protection order, and then asked that the judge get involved in interpreting what the order meant. But from the officer's perspective, what was he supposed to do? He went to the source. But I've never seen it before, Your Honor. I can't explain it. Maybe the officer should have called you up to ask you what the order meant. If he called me that late, Your Honor, I probably wouldn't have answered the phone. I have cholera. I live in Boise. You also asked, Your Honor, is that what happens in rural Idaho? And I've got to say there's a lot of things that happen in rural Idaho that don't happen elsewhere. The second point that I wanted to make is, for the first time in the reply brief, Mr. James makes the argument that there may be some preclusive effect of the fact that the prosecution against Mr. James wasn't pursued. And I haven't had a chance to address that in my briefing, so let me just simply very simply address it. Three arguments against it. First time, he's raised it on appeal in a reply brief. Secondly, there's absolutely no factual support as the basis for the dismissal of the prosecution. And thirdly, the preclusion rules in Idaho would apply to that. There's a case, Anderson v. City of Pocatello, that says even if you're going to Is that a case that hasn't been cited to us? That's correct. I'll ask you to do the same thing with the response to that. I have a question. Has the county and Mr. James, have you explored using the circuit's mediation, Ninth Circuit mediation tool? Because I don't know if Mr. James can get past the legal hurdles here of judicial immunity, and I don't think the prosecutor, there's no evidence the prosecutor was involved, and the police, you could see them relying on what a judge says, but clearly he did get a raw deal. And has there been any consideration of mediating to see if there could be some agreed solution? Your Honor, two things. I didn't choose to mediate, and I don't remember whether we were approached or not, frankly. I have enough appellate work. I don't remember this case from another one. But I don't think he got a raw deal. And it really goes to the question of the probable cause. All I have to show is that my officer was objectively reasonable. But what they've done is gone outside that and said, there was no issue about driveway at the time. Well, that's malarkey. And let me give you, I know I have 44 seconds, so I'm going to be very quick. In the amended complaint, paragraphs, I'll give you the cites to the excerpts of 213, 214, and 214. They talk about that the very issue was the driveway. They talk about whether he could be there or not. And he comes up with this idea that there's an exception in the protection order that says he can be there in the event of an emergency. Well, it doesn't apply. That applies to communications. But logically, Your Honor, if there's only a small area that he can be restricted from, why is he even telling the law enforcement officer that there's an exception? Because he has the right to be there according to him. It makes absolutely no sense to me. There's a line of authority saying that if an officer makes a mistake of law and arrests without probable cause, thinking that there's probable cause because he mistakes the law, he's not protected. Now, is this a mistake of the law? If we assume that the protective order really didn't apply to his presence in the barn. You put me in the box, Your Honor, because I think it did apply. But is this a mistake of law or is this a mistake of fact? Clearly, there's no dispute about the facts. I mean, everybody knows where Mr. James was. There's no dispute about the underlying facts. That's true. I just wonder whether a protective order is in the nature of a law or is it more like a contract? Obviously, I represent the law enforcement officer and my answer is biased without any authority, Your Honor. But if it's an ambiguous law, what is the policeman supposed to do? Thank you very much. Thank you, Counsel. The case just argued is submitted and we very much appreciate the arguments of all counsel. They were very helpful. And those of you who are doing additional citations, if you will quietly see Ms. Brebner for the correct format for that. Do you have those, Stacey? Thank you. Okay. We'll next hear United States v. Ceballos.
judges: Canby, Graber, Gould